# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Theresa Fortier

     v.                            Civil No. 16-cv-322-LM
                                         Opinion No. 2017 DNH 187

Hartford Life and Accident
Insurance Company et al.

## O R D E R

Plaintiff Theresa Fortier, a former doctor at the Dartmouth-Hitchcock Clinic ("DH Clinic"), alleges that defendants Hartford Life and Accident Insurance Company ("Hartford") and the Dartmouth-Hitchcock Clinic Long Term Disability Plan ("LTD Plan") unlawfully stopped paying long-term disability benefits to which she is entitled.  Her first amended complaint consists of four counts: two brought pursuant to the Employee Retirement Income Security Act ("ERISA") to recover benefits under the LTD Plan (Count I) and a life insurance plan (Count II); one alleging that a mental illness limitation in the LTD Plan violates the Americans with Disabilities Act ("ADA") and "New Hampshire anti-discrimination laws" (Count III); and one seeking an award of attorney's fees and costs (Count IV).  See doc. no. 13.  Defendants move, pursuant to Federal Rule of Civil procedure 12(b)(6), to dismiss Counts I and III.  Fortier objects.

## I.   Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II.   Background

The facts recited in this section are drawn from: (1) Fortier's first amended complaint; (2) exhibits attached to that complaint; and (3) certain documents attached to defendants' motion to dismiss and reply to Fortier's objection.

Fortier contends that the court may not consider three of these documents when conducting its analysis: the LTD Plan policy, the LTD Plan certificate of insurance, and the certificate of insurance from a different long-term disability policy.  Doc. nos. 16-2, 16-3, 22-1.   A court may consider "documents central to plaintiffs' claims[] and documents

sufficiently referred to in the complaint." Brennan v. Zafgen, Inc., 853 F.3d 606, 610 (1st Cir. 2017) (original bracketing omitted) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Here, the first amended complaint explicitly references the insurance documents and directly quotes from the LTD Plan certificate of insurance. See, e.g., doc. no. 13 ¶¶ 24, 69, 72. Moreover, these documents are central to Fortier's claims, as she seeks to recover benefits under the LTD Plan and argues that defendants reviewed her claim under the incorrect certificate of insurance. Thus, these documents are properly before the court. Cf. Prouty v. Hartford Life & Acc. Ins. Co., 997 F. Supp. 2d 85, 89 (D. Mass. 2014) ("Where Plaintiff has not produced the document forming the basis of her lawsuit, it would be both unfair and improper to prevent Defendants from referencing that document in their motions to dismiss.").

A.    **The LTD Plan**

The LTD Plan provides long-term disability insurance coverage for employees of the DH Clinic. This coverage is fully insured by Hartford. The terms of the LTD Plan are contained in an insurance policy ("LTD policy") and a certificate of insurance ("LTD certificate"). Doc. nos. 16-2; 16-3. The LTD certificate is expressly incorporated into the LTD policy. Doc. no. 16-2 at 8.

The LTD Plan contains a maximum duration of benefits.  See doc. no. 16-3 at 3.  For those under the age of 63, the maximum duration of benefits is "to normal retirement age or 42 months, if greater."  Id. (capitalization modified).  Under certain circumstances, however, the duration of coverage is limited.  For instance, if a beneficiary is disabled due to mental illness, then benefits are only payable under the LTD Plan

> 1) for as long as [the beneficiary is] confined to a hospital or other place licensed to provide medical care for the disabling condition; or 2) if not confined, or after [the beneficiary is] discharged and still disabled, for a total of 24 month(s) for all such disabilities during [the beneficiary's] lifetime.

Doc. no. 16-3 at 8 (capitalization modified).

The LTD Plan also contains procedures for appealing the denial of a claim.  For instance, page 21 of the LTD certificate states that if a beneficiary's claim is denied, that beneficiary "must request review upon written application within 180 days of receipt of claim denial" regardless of whether that claim required a determination of disability by Hartford.  Doc. no. 16-3 at 15 (numbering omitted).  Page 39 of the LTD certificate contains similar requirements for determination of disability claims, stating that a beneficiary's appeal request "must be in writing and be received by the Insurance Company no later than 180 days from the date [the beneficiary] received [his/her] claim denial."  Id. at 33.  Page 39 further states that "[o]n

any wholly or partially denied claim," the beneficiary "must appeal once to the Insurance Company for full and fair review" and must "complete this claim appeal process before [he/she] file[s] an action in a court." Id. Page 40 of the LTD certificate contains nearly identical procedures for claims not requiring a determination of disability, except that it specifies such an appeal be filed "no later than 60 days from the date [the beneficiary] received [his/her] claim denial" rather than 180 days. Id. at 34.

**B.   Fortier's Claim**

At all times relevant to this case, Fortier was employed as a physician at the DH Clinic. Through her employment, Fortier was a beneficiary and participant under the LTD Plan. At some point during her employment, Fortier contracted a virus that ultimately caused her to suffer permanent cognitive deficits. These deficits have prevented Fortier from performing the essential functions of her work as a physician. And, though she has received continuous treatment since the onset of her illness, these deficits have prevented her from returning to her work at the DH Clinic. As Fortier has also been unable to pursue other employment as a result of her illness, she applied for long-term disability benefits through the LTD Plan.

Hartford and the LTD Plan began paying Fortier long-term disability benefits on November 2, 2009.  Defendants terminated these benefits on November 1, 2011, on the basis that Fortier's claim was subject to the 24-month limitation for mental illness claims.  Fortier timely appealed that decision, and her benefits were reinstated on May 22, 2012.

In July 2013, Fortier's attorney received a letter from Hartford.  In this letter, Hartford once again stated that it had determined that Fortier's disability was caused by mental illness and was therefore subject to the mental illness limitation.  The letter stated that Fortier's LTD benefits accordingly "will cease on 09/13/2013" unless Fortier was "hospitalized prior to that date," in which case "her benefits may be extended."  Doc. no. 16-4 at 1.  The letter noted that Fortier was entitled, under ERISA, to appeal the denial of coverage, but stated that if she wished to do so, she or her authorized representative "must write to [Hartford] within one hundred eighty (180) days of receipt of this letter."  Id.

Fortier stopped receiving her benefits under the LTD Plan on September 13, 2013.  She filed an appeal of Hartford's decision to terminate her benefits on March 7, 2014.  This appeal was filed 175 days after September 13, 2013, the date on which Fortier's benefits were terminated, but 219 days after July 31, 2013, the last day of the month in which Fortier

concedes she received the July 17, 2013 letter. On March 25, 2014, Hartford informed Fortier by letter that it would not review the substance of her appeal because it was untimely. Fortier's counsel sent Hartford a letter on July 25, 2014, stating that in his view, the appeal period ran from September 13, 2013, not July 17, 2013. Hartford disagreed and refused to examine the substance of Fortier's appeal. This action followed.

### III. <u>Discussion</u>

Defendants move to dismiss Counts I and III of Fortier's first amended complaint. Fortier brings Count I pursuant to ERISA and seeks to recover long-term disability benefits under the LTD Plan. Defendants contend that this count must be dismissed because Fortier failed to exhaust her administrative remedies, as she failed to file a timely appeal under the LTD Plan. In Count III, Fortier contends that the mental illness limitation violates Titles I and III of the ADA and "New Hampshire anti-discrimination laws" by providing different levels of coverage for physically and mentally disabled beneficiaries. Defendants contend that this count must be dismissed both due to lack of standing and because Fortier has failed to state a claim upon which relief may be granted. The court considers each count in turn.

**A.  Count I**

The parties' sole dispute as to Count I revolves around exhaustion.  Under ERISA, every benefit plan must, among other things, "afford reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).  The Secretary of Labor ("Secretary") has promulgated regulations for the administrative review of claims for plan benefits.  See 29 C.F.R. § 2560.503—1. Among these is a requirement that every employee benefit plan "[p]rovide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination."  Id. § (h)(2)(i).  This period is extended to "at least 180 days following receipt of a notification of an adverse benefit determination" when the employee benefit plan is a "group health plan."  Id. § (h)(3)(i).[1]

The regulations further require that the communication of denial of benefits "spell out the specific reasons for an

_____

[1] "The term 'group health plan' means an employee welfare benefit plan providing medical care (as defined in section 213(d) of Title 26) to participants or beneficiaries directly or through insurance, reimbursement, or otherwise."  29 U.S.C. § 1167 (1).

adverse determination, delineate the particular plan provisions on which the determination rests, furnish a description of any additional material necessary to perfect the claim, and provide a description of the plan's review procedures and applicable time limits." Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc., 813 F.3d 420, 425 (1st Cir. 2016) (citing 29 C.F.R. § 2560.503-1(g)(1)).  Though a beneficiary may bring suit challenging the denial of benefits under a plan subject to ERISA, see 20 U.S.C. § 1132(a), she must first exhaust her plan's administrative remedies, see Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49, 52 (1st Cir. 2014); see also Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 610 (2013) (noting that federal courts of appeals have "uniformly required that participants exhaust internal review before bringing a claim for judicial review").

Defendants contend that Fortier failed to exhaust her administrative remedies because she did not appeal the denial of her long-term disability coverage within 180 days of receipt of the July 17, 2013 letter.  Defendants assert, and Fortier does not dispute, that her claim required Hartford to make a determination of disability.  Defendants note that under such circumstances, the LTD Plan requires a beneficiary to file her appeal within 180 days of the day she received her claim denial. Doc. no. 16-3 at 15, 33.  Defendants point to the July 17, 2013

letter, which they contend: (1) informed Fortier that her benefits would cease on September 13, 2013; (2) explained the basis for that adverse determination; and (3) indicated that if Fortier wished to appeal that determination, she or her representative "must write to [Hartford] within one hundred eighty (180) days of receipt of this letter." See doc. no. 16-4. Defendants note that there is no dispute Fortier did not file her appeal until March 7, 2014, well more than 180 days after she received the July 17, 2013 letter. Thus, according to defendants, Fortier's appeal was untimely.

In response, Fortier marshals a litany of legal and factual arguments. Though not always clear from her papers where one argument stops and the next one begins, the court understands Fortier to make the following four arguments: (1) that her appeal was timely as a matter of law because it was filed within 180 days of the day she stopped receiving her benefits under the LTD Plan; (2) that even if her appeal was untimely, it should be excused because defendants failed to faithfully copy the LTD Plan appeals requirements into the July 17, 2013 letter; (3) that her untimely appeal should be excused due to ambiguities in the LTD Plan language relating to appeals; and (4) that dismissal of Count I on exhaustion grounds is inappropriate due

to the application of the New Hampshire "notice-prejudice" rule.[2]
The court considers each of these arguments in turn.

1.   Timeliness of Fortier's Appeal

First, Fortier argues that her appeal was timely as a
matter of law because it was filed within 180 days of September
13, 2013, the day she stopped receiving benefits under the LTD
Plan.  To this end, Fortier alleges that the denial of benefits
in the July 17, 2013 letter was not sufficiently definite to
trigger the appeals period, because the letter suggested that
her benefits could be extended if she were hospitalized before
September 13, 2013.  The court is not persuaded by this
argument.

The July 17, 2013 letter contained both a definite
explanation as to why Fortier was no longer entitled to benefits
after September 13, 2013, and a definite statement that
Fortier's benefits would end on that date.  Doc. no. 16-4 at 1
("[T]he benefits will cease on 09/13/2013" (emphasis added)).
Fortier does not cite, and the court cannot identify, any

_____

[2] Fortier also raises two related procedural arguments that
she believes preclude dismissal of Count I: (1) that defendants
incorrectly argue that ERISA exhaustion is a jurisdictional
prerequisite when it is in fact an affirmative defense; and (2)
that defendants have not met the heightened requirements for
Rule 12(b)(6) dismissal based on an affirmative defense.  The
court need not reach either of these arguments in light of its
determinations infra.

authority for the proposition that these statements somehow do not constitute an "adverse benefit determination" simply because other provisions of the ERISA plan remained in effect until the date the benefits were ultimately terminated. Indeed, Fortier's interpretation is contrary to the plain language of the July 17, 2013 letter, the LTD Plan documents, and ERISA itself, all of which support the conclusion that the appeals period commenced once Fortier received notification that her benefits were being terminated. See doc. no. 16-3 at 15, 33 (noting that appeals must be filed within 180 days of the date the beneficiary receives a denial of coverage); doc. no. 16-4 at 3 (instructing Fortier or her representative to appeal "within one hundred eight (180) days of receipt of this letter" (emphasis added)); see also 29 C.F.R. § 2560.503—1(h)(2)(i), (h)(3)(i) (contemplating appeals period commencing upon "receipt of a notification of an adverse benefit determination" (emphasis added)). Thus, absent any contrary authority, there is no basis to conclude that the appeals period in this case commenced on any date other than the date on which Fortier received the July 17, 2013 letter.

> 2. Recitation of Appeals Terms in July 17, 2013 Letter

Next, Fortier argues that defendants failed to comply with ERISA because they did not copy the appeal terms from the LTD

Plan documents into the July 17, 2013 letter.  She specifically contends that the inclusion of the words "from receipt of this letter" in the July 17, 2013 letter impermissibly amended the LTD Plan.  This argument, too, is unavailing.

There is no requirement under ERISA that a notification of an adverse benefit determination quote verbatim the appeals procedure language in the governing ERISA plan document. Instead, the notification must "set forth, in a manner calculated to be understood by the claimant - the time limits applicable to [the plan's review] procedures . . . ."  29 C.F.R. § 2560.503—1(g)(1)(iv).  The July 17, 2013 letter did exactly that: it explained, in plain terms, that Fortier or her representative must appeal within 180 days of the date she received notification that her claim had been denied.  This language tracks closely the requirements in the LTD certification.  That the July 17, 2013 letter took the additional step of making clear that the letter itself constituted the operative notification does not alter this conclusion.  If anything, the inclusion of the phrase "from receipt of this letter" only enhances the likelihood that Fortier would understand that the July 17, 2013 letter constituted an adverse benefit determination and that she had 180 days from receipt thereof to appeal.  Fortier's argument to the contrary is therefore misplaced.

### 3.   Ambiguities in Plan Language

Fortier next argues that her untimely appeal should be
excused due to ambiguities in the LTD Plan language as it
relates to appeals.  Though it is not abundantly clear just what
Fortier believes to be ambiguous about the operative LTD Plan
language, the court construes her papers to assert two distinct
ambiguities.  First, Fortier appears to rely upon the fact that
the LTD certification mandates both 180-day and 60-day appeals
periods for claims not requiring Hartford to make a
determination of disability.  Compare doc. no. 16-3 at 15 with
id. at 34.  Fortier does not dispute, however, that she is not
subject to these provisions because her claim required Hartford
to make a determination of disability.  And even if she were,
her appeal would have been untimely regardless of whether a 60-
day or 180-day appeal period applied.  This inconsistency
therefore does not excuse Fortier's untimely appeal.

Second, Fortier appears to contend that the requirement in
the LTD certificate that a beneficiary or her representative
"appeal once" before filing an action in court is ambiguous.  To
this end, Fortier suggests that she could reasonably be viewed
as already having "appealed once," as she filed an appeal of a
previous termination of her benefits in November of 2011.  Such
a reading is inconsistent with the language of the LTD

certificate, however, which states: "On any wholly or partially denied claim, you or your representative must appeal once to [Hartford] for a full and fair review."  Doc. no. 16-3 at 33 (emphasis added).  This language, by its plain terms, requires a beneficiary or her representative to "appeal once" to Hartford on each wholly or partially denied claim.  The LTD certificate is therefore not ambiguous in this regard.

        4.    Notice-Prejudice Rule

        Lastly, Fortier argues that the court cannot dismiss Count I on exhaustion grounds because defendants have failed to demonstrate that they were prejudiced by her untimely appeal. In support of this argument, Fortier relies on the "notice-prejudice" rule, a doctrine recognized in some states that requires an insurer to demonstrate prejudice before it can deny insurance coverage solely on the basis that the insured's claim was untimely.

        The parties agree that the New Hampshire Supreme Court has recognized at least a limited form of the notice-prejudice rule under New Hampshire common law.  See Bianco Prof'l Ass'n v. Home Ins. Co., 144 N.H. 288, 295 (1999) (citation omitted) (applying the rule to certain types of liability insurance policies). And, the parties also agree that in a state where the notice-prejudice rule is recognized, ERISA does not preempt the

application of that rule to an untimely _initial_ claim for benefits under an ERISA plan.  See UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 367–73 (1999) (holding that ERISA does not preempt California's notice-prejudice rule because the rule "regulat[es] insurance" and thus escapes preemption under ERISA's savings clause).  Thus, the parties' dispute requires the court to answer a narrow question: does New Hampshire's notice-prejudice rule apply to untimely ERISA _appeals_?

Neither the Supreme Court nor the First Circuit (nor, indeed, any court in this district) has considered this particular issue.  Of the handful of federal courts that have, a majority have either held or suggested that the notice-prejudice rule does not extend to untimely ERISA appeals.  See Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355, 363 (7th Cir. 2011); Chang v. Liberty Life Assur. Co. of Boston, 247 F. App'x 875, 878 (9th Cir. 2007); Dietz-Clark v. HDR, Inc., No. 3:15-CV-00035 JWS, 2015 WL 6039587, at *2 (D. Alaska Oct. 15, 2015); Knight v. Provident Life & Acc. Ins. Co., No. 3:12-CV-01226, 2014 WL 460018, at *2 n. 4 (M.D. Tenn. Feb. 5, 2014); Tetreault v. Reliance Standard Life Ins. Co., No. CIV.A. 10-11420-JLT, 2011 WL 7099961, at *10 (D. Mass. Nov. 28, 2011), report and recommendation adopted, No. CIV.A. 10-11420-JLT, 2012 WL 245233 (D. Mass. Jan. 25, 2012).  Contrary authority can be found in an opinion out of the Eastern District of Pennsylvania, in which

the court suggests in dictum that an untimely ERISA appeal would have been subject to the notice-prejudice rule, and a subsequent decision out of the Western District of Pennsylvania that parenthetically quotes that dictum. See Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund, 91 F. Supp. 2d 797, 803 n. 6 (E.D. Pa. 2000); see also Taylor v. Fortis Benefits Ins. Co., No. CIV. A. 07-528, 2008 WL 3249940, at *3 (W.D. Pa. May 1, 2008), report and recommendation adopted, No. 2:07-CV-528, 2008 WL 3249655 (W.D. Pa. Aug. 6, 2008), aff'd sub nom. Taylor, Jr. v. Union Sec. Ins. Co., 332 F. App'x 759 (3d Cir. 2009).

Though inclined to agree with the majority position, the court declines to rule now, as a matter of law, that the notice-prejudice rule is inapplicable to Fortier's ERISA appeal. Several considerations militate against resolving this issue without further briefing. For one, most of the courts taking the majority position relied on particular nuances in state insurance law when concluding that the notice-prejudice rule did not apply to ERISA appeals.[3] Here, no party has addressed how

---

[3] Both the Edwards and Tetreault courts relied on the fact that the underlying state notice-prejudice rules only applied to liability insurance policies. See 639 F.3d at 363; 2011 WL 7099861, at *9. Similarly, the Dietz-Clark court explicitly noted that Alaska cases "simply do not support application of the notice-prejudice rule to a deadline of a post-denial appeals that is mandated by a federal regulation." 2015 WL 6039587, at *2.

New Hampshire insurance law may be similar to or different from the law applied in those cases or how the nuances of New Hampshire law might impact the application of the notice-prejudice rule in this case. Additionally, nearly all of the cases addressing this question were decided on summary judgment.[4] These facts, when considered in light of the lack of controlling authority on this issue and the relative paucity of authority from other jurisdictions, persuade the court to refrain from ruling on this matter now.

The court therefore defers ruling on the application of the New Hampshire notice-prejudice rule to this case until the summary judgment stage. To the extent defendants renew their exhaustion argument at that time, and Fortier continues to rely on the notice-prejudice rule as a basis for defeating exhaustion, the parties would be well-advised to further develop this issue in their briefing. On this basis, defendants' motion to dismiss Count I is denied without prejudice.[5]

----

[4] Only one of the cases cited above resolved this issue on a Rule 12(b)(6) motion. See Dietz-Clark, 2015 WL 6039587, at *1.

[5] In addition to her legal arguments, Fortier asserts numerous fact-based arguments as to why dismissal is improper. In light of the court's resolution of the motion to dismiss as to Count I, the court need not address these factual arguments.

**B.   Count III**

     In Count III, Fortier contends that the LTD Plan violates
Titles I and III of the ADA and "New Hampshire anti-
discrimination laws" by treating those suffering from mental
disabilities differently than those suffering from physical
disabilities.  Defendants argue that Fortier lacks standing to
bring this claim.  Alternatively, they contend that Fortier has
failed to state a claim upon which relief may be granted.  The
court declines to reach the standing issue because, even
assuming standing exists, Fortier has not stated a viable claim
for relief.

     Though the First Circuit has not directly considered
whether the ADA is violated when, as here, a long-term
disability insurance plan provides different levels of benefits
for physical and mental disabilities, at least two courts in
this district have answered this question in the negative.  See
Witham v. Brigham & Women's Hosp., Inc., No. CIV. 00-268-M, 2001
WL 586717, at *4 (D.N.H. May 31, 2001); Pelletier v. Fleet Fin.
Grp., Inc., No. CIV. 99-245-B, 2000 WL 1513711, at *2 (D.N.H.
Sept. 19, 2000).  In reaching their conclusions, these courts
relied on the reasoning of the Second Circuit's decision in EEOC
v. Staten Island Sav. Bank, 207 F.3d 144 (2d Cir. 2000).  See
Witham, 2001 WL 586717, at *3; Pelletier, 2000 WL 1513711, at
*3.  In that case, the Second Circuit considered several

factors, including: (1) the statutory language of Title I; (2) the ADA's legislative history; (3) the existence of the ADA's safe-harbor provision; (4) regulatory guidance; and (5) Congress's awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities." See Staten Island Sav. Bank, 207 F.3d at 151-53; Witham, 2001 WL 586717, at *3; Pelletier, 2000 WL 1513711, at *3. The Witham and Pelletier courts also distinguished Olmstead v. L.C., 527 U.S. 581 (1999), in which the Supreme Court suggested that the ADA might prohibit individualized discrimination based on a particular disability or category of disabilities, concluding that the "reasoning underlying Olmstead does not invalidate the type of disability insurance policy at issue . . . ." See Witham, 2001 WL 586717, at *3; Pelletier, 2000 WL 1513711, at *3; see also Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1117–18 (9th Cir. 2000) ("Olmstead does not speak to insurance classifications . . . [and] [a]pplying Olmstead to insurance classifications would conflict with the [Supreme] Court's decisions in Alexander v. Choate and Traynor v. Turnage, which both endorse distinctions between types of disabilities, and Congress's clear instruction in the insurance safe harbor that the Act was not intended to reach common insurance practices such as underwriting of risks.").

In addition to the Second Circuit, there are at least six other courts of appeals that so hold. See Weyer, 198 F.3d at 1113-18 (9th Cir. 2000); Kimber v. Thiokol Corp., 196 F.3d 1092, 1101-02 (10th Cir. 1999); Lewis v. Kmart Corp., 180 F.3d 166, 170 (4th Cir. 1999); Ford v. Schering-Plough Corp., 145 F.3d 601, 608 (3d Cir. 1998); Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1018 (6th Cir. 1997); EEOC v. CNA Ins. Cos., 96 F.3d 1039, 1044 (7th Cir. 1996). Although there is a small handful of contrary district court authority, see, e.g., Fletcher v. Tufts Univ., 367 F. Supp. 2d 99, 111 (D. Mass. 2005), the circuits appear to uniformly hold that differential-benefits claims are not cognizable under the ADA.

While recognizing this weight of authority, Fortier relies on Sirva Relocation, LLC v. Richie, 794 F.3d 185 (1st Cir. 2015), to argue that dismissal of Count III is improper. The appellant in Sirva, like Fortier here, urged the court to hold that a differential-benefits claim exists under the ADA. The First Circuit declined in Sirva to rule on the viability of differential-benefits claims under the ADA, concluding that a ruling on that issue was unnecessary to resolve the appeal. Id. at 200. The First Circuit nevertheless noted the consensus of circuit authority holding that no differential-benefits claim exists under the ADA, as well as the contrarian views held by some district courts. Id. at 199. The First Circuit declined

to describe the appellee's position as a "slam dunk," but noted that "the answer to [the] question seem[ed] much clearer than the [appellant] admit[ted] . . . ." Id. at 200.

The court agrees with Fortier that Sirva leaves open the question of differential-benefits claims under the ADA as a matter of First Circuit law. This does not, however, compel the court to conclude, as Fortier appears to contend, that the First Circuit was signaling in Sirva that it was inclined to recognize such claims. There is nothing in Sirva (nor, indeed, in any of the district court opinions recognizing differential-benefits claims) that persuades the court that Witham and Pelletier were incorrectly decided or that the court should stray from the consensus view of the other circuit courts. Thus, the court concludes, for the reasons discussed in these prior cases, that differential-benefits claims are not cognizable under the ADA. Defendants' motion is therefore granted as to Count III.[6]

_____

[6] Though Fortier also alleges that the LTD Plan violates "New Hampshire anti-discrimination laws," she has not identified, either in the first amended complaint or her filings, any state statutory provision or common-law doctrine that she believes has been violated. Nor has she explained how a differential-benefits claim is cognizable under New Hampshire law. She has therefore failed to provide any state-law basis to sustain Count III.

## IV.   <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss (doc. no. 16) is denied as to Count I and granted as to Count III.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 11, 2017

cc:   Jonathan M. Feigenbaum, Esq.
      Joseph C. Galanes, Esq.
      Byrne J. Decker, Esq.
      Kaveh S. Shahi, Esq.