Theresa Fortier

     v.

Hartford Life and Accident
Insurance Company et al.

Civil No. 16-cv-322-LM
Opinion No. 2018 DNH 138

**O R D E R**

Plaintiff Theresa Fortier, a former doctor at the Dartmouth-Hitchcock Clinic ("DH Clinic"), brings suit alleging that defendants Hartford Life and Accident Insurance Company ("Hartford") and the Dartmouth-Hitchcock Clinic Long Term Disability Plan ("Plan") unlawfully stopped paying long-term disability benefits to which she is entitled. She also alleges that Hartford wrongfully terminated her waiver of premium benefits under her life insurance policy.[1] The causes of action remaining in this case are two claims pursuant to the Employee Retirement Income Security Act ("ERISA") to recover benefits under the LTD policy (Count I) and Fortier's life insurance policy (Count II); and a third claim seeking an award of

---

[1] The Plan consists of both a long-term disability policy (the "LTD policy") and a life insurance policy. In addition, the terms of the LTD Policy are provided in a certificate of insurance, which is expressly incorporated into the LTD policy.

attorney's fees and costs (Count IV).[2]  The parties cross-move for judgment on the administrative record.  The court held oral argument on July 2, 2018.

## STANDARD OF REVIEW

The standard of review in an ERISA case differs from that in an ordinary civil case, where summary judgment is designed to screen out cases that raise no trial-worthy issues.  See Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517 (1st Cir. 2005). "In the ERISA context, summary judgment is merely a vehicle for deciding the case" in lieu of a trial.  Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 235 (1st Cir. 2006).  Rather than consider affidavits and other evidence submitted by the parties, the court reviews the denial of ERISA benefits based "solely on the administrative record," and neither party is entitled to factual inferences in its favor.  Id.  Thus, "in a very real sense, the district court sits more as an appellate tribunal than as a trial court" in deciding whether to uphold the administrative decision.  Leahy v. Raytheon Co., 315 F.3d 11, 18 (1st Cir. 2002).

---

[2] Defendants previously moved to dismiss Counts I and III. The court denied the motion as to Count I, but granted the motion as to Count III, which alleged that a mental illness limitation in the Plan violates the Americans with Disabilities Act and certain state laws.  See doc. no. 24.

**BACKGROUND**

The facts recited in this section are drawn from the parties' joint statement of material facts, which they submitted pursuant to Local Rule 9.4(b), see doc. no. 29, as well as documents contained in the administrative record.

At all times relevant to this case, Fortier was employed as a physician at the DH Clinic. Through her employment, Fortier was a beneficiary and participant in DH Clinic's Plan, offered through Hartford. The Plan provided both the LTD policy and a life insurance policy. Fortier maintained coverage under both policies throughout her employment.

On May 6, 2009, Fortier stopped working due to a medical condition.[3] In November 2009, she filed an LTD claim with Hartford, stating that she was unable to work because of a disability as of May 6, 2009. By letter dated December 18, 2009, Hartford notified Fortier that it had approved her LTD claim and would begin paying benefits effective November 2, 2009.

On February 5, 2010, Hartford informed Fortier by letter that her LTD policy required her to apply for Social Security Disability benefits if she anticipated being out of work for 12 months or more. Fortier applied for Social Security benefits

---

[3] As discussed further infra, the nature of Fortier's medical condition is in dispute in this case.

and, on April 10, 2011, was awarded benefits effective May 6, 2009.

By letter dated June 1, 2010, Hartford notified Fortier that because of her disability, she qualified for a waiver of premium for her life insurance coverage under the Plan.  The letter stated that Fortier's life insurance benefits "will remain in effect without premium payment until date of termination 01/07/2026, provided you remain Disabled as defined by the Policy."  Doc. no. 29 at ¶ 11.  The letter further stated: "Periodically, we will be requesting updated medical information from you to verify your continued disability, and consequently your continued eligibility for the Waiver of Premium benefit."  Admin. Rec. at 159.

I.   Hartford Terminates then Reinstates Fortier's LTD Benefits

In a letter dated September 13, 2011, Hartford notified Fortier that her LTD benefits would terminate on November 1, 2011 because her disability was subject to the LTD policy's "Mental Illness" limitation, which limits LTD benefits to 24 months for disabilities "because of . . . Mental Illness that results from any cause; . . . [or] any condition that may result from Mental Illness."  Doc. no. 29 at ¶ 15.  The letter stated that Fortier's medical records supported a diagnosis of "Cognitive Disorder NOS," which fell under the Mental Illness

4

policy provision.  Id.  The letter also provided: "If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter."  Id.

By letter dated March 5, 2012, Fortier's counsel requested that Hartford extend the deadline to appeal the adverse benefit determination by 60 days.[4]  Hartford granted the request and extended Fortier's time to appeal to May 11, 2012.  Fortier's counsel appealed Hartford's determination on that date, and submitted medical records to Hartford to contest the diagnosis of Cognitive Disorder NOS.  The court will refer to Fortier's May 11, 2012 appeal as the "2012 appeal."

By letter dated May 22, 2012, Hartford notified Fortier's counsel that "[b]ased on a complete and thorough review of this file, we have determined that Dr. Fortier is entitled to continued LTD benefits beyond November 1, 2011, subject to all policy provisions and guidelines."  Id. at ¶ 19.  Although not stated in the letter, Hartford's records show that Fortier's benefits were reinstated because, per Hartford's policy, the 24-month limitation for Mental Illness benefits begins to run from the date Hartford informs the beneficiary of the limitation.  In

---

[4] Fortier's counsel's letter was sent no later than 174 days after he received the September 13, 2011 letter.

other words, Hartford reset the 24-month period to begin on September 13, 2011, the date it informed Fortier of the limitation.  On June 4, 2012, Hartford notified Fortier by letter of the reason for the reinstatement, and informed her that "no benefits will be payable beyond 09/12/2013 for mental illness."  Id. at ¶ 20.

II.  Hartford Again Terminates Fortier's LTD Benefits

By letter dated July 17, 2013, Hartford notified Fortier's counsel that Hartford would stop paying Fortier LTD benefits on September 13, 2013.  The letter read, in relevant part:

> We based our decision to terminate Dr. Fortier's claim on policy language.  All the documents contained in her file were reviewed as a whole . . . .
>
> As we indicated in our letter dated 06/04/2012, Dr. Fortier[] was notified on 09/13/2011 that her claim for benefits was subject to the limitation for Mental Illness benefits.
>
> The information in Dr. Fortier's file shows that she received LTD benefits beginning 11/02/2009 for Disability due to Cognitive Disorder NOS.  When she stopped working 05/06/2009, she presented with reported impaired concentration and forgetfulness and it was suggested this was possibly due to encephalopathy secondary to viral infections.  However, subsequent objective testing did not provide support of a physically disabling condition.
>
> Since her Disability was the result of a Mental Illness, the LTD benefits were subject to the Mental Illness and Substance Abuse Benefits provision. Dr. Fortier's benefits commenced on 11/02/2009.  You were notified of the limitation for Mental Illness on 09/13/2011.  Therefore, the 24 month duration of benefits for your Mental Illness will expire on

09/13/2013 and her claim will be closed. However, if
she is hospitalized prior to that date, the benefits
may be extended.

Please notify our office immediately if Dr. Fortier is
hospitalized at any time, or if she becomes Disabled
due to a physical impairment. If she were
hospitalized at any time prior to the date her
benefits are currently set to expire, we will need to
obtain copies of the medical records from the hospital
during the exact dates that she was hospitalized.

Id. at ¶ 21. Importantly, the letter also stated: "If you do

not agree with our denial, in whole or in part, and you wish to

appeal our decision, you or your authorized representative must

write to us within one hundred eighty (180) days from the

receipt of this letter." Id.

On August 10, 2013, Fortier's counsel requested a copy of

the claim file from Hartford. On August 19, 2013, Hartford

provided the claim file to Fortier's counsel.

By letter dated March 7, 2014, Fortier, through her

counsel, appealed Hartford's adverse LTD benefit determination

(the "2014 appeal"). Hartford notified Fortier's counsel in a

letter dated March 26, 2014, that Fortier's appeal was untimely

because it was not submitted within 180 days of her receipt of

the July 17, 2013 adverse benefit determination letter.[5] The

---

[5] Although the record is not clear as to when Fortier
received the July 17, 2013 letter, she does not dispute that it
was more than 180 days prior to March 7, 2014.

March 26 letter informed Fortier's counsel that Hartford would

not consider her appeal because it was untimely.

III. <u>Hartford Terminates Fortier's Waiver of Premium Benefits</u>

By letter dated September 23, 2013, Hartford notified

Fortier's counsel:

> [I]n order for your client's Group Life Insurance to
> continue through [the LWOP] benefit, she must remain
> totally Disabled as defined in this Policy.  Please
> complete the enclosed Authorization to Obtain and
> Release Information form and the Personal Profile
> Evaluation form and return to us in the self-addressed
> envelope.  In accordance with the terms of this
> Policy, we ask that you also submit evidence of
> continuing disability.  Enclosed is an Attending
> Physician's Statement, Psychiatric Attending
> Physician's Statement, and Behavioral Functional
> Evaluation form that her physician must complete and
> return to us . . . by 10/7/13. We need this
> information to determine if you continue to meet the
> definition of Disability and remain under the care of
> a Physician.

<u>Id.</u> at ¶ 24.

Hartford sent Fortier's counsel follow-up letters on

October 10 and November 8, 2013, reminding him that Hartford

needed additional information to determine whether Fortier

remained under a disability.  The letters informed Fortier's

counsel that absent further information, her waiver of premium

benefits would be terminated.

On December 4, 2013, Hartford notified Fortier's counsel by

letter that it had not received any response to its September

23, October 10, or November 8, 2013 letters.  Hartford stated in

its letter that it was terminating Fortier's waiver of premium benefits as of that date. The December 4 letter also stated: "If you do not agree with the reason why your claim was denied, in whole or part, and you wish to appeal our decision, you must write to us within one hundred eighty (180) days of the date of this letter." Id. at ¶ 27.

By letter dated June 1, 2014, Fortier's counsel timely appealed Hartford's adverse determination regarding the waiver of premium benefits. In the letter, Fortier's counsel stated that he was including the March 7, 2014 letter appealing Hartford's termination of her LTD benefits, as well as "clinical notes of Dr. Belliveau." Admin. Rec. at 172. The letter also stated "[a]dditional documents will be sent to Hartford soon." Id.

By letter dated June 10, 2014, Hartford acknowledged receipt of the appeal, gave Fortier's counsel the address to send any additional documents, extended the deadline for Fortier's appeal to July 7, 2014 so that he could forward any additional documents, and stated that if Hartford did not receive additional documentation by that date, it would evaluate the appeal based on the information it currently had.

Fortier's counsel did not submit any further documents in connection with Fortier's appeal. By letter dated July 21, 2014, Hartford denied the appeal, noting that it had not

received any additional documentation, and that the psychiatric office visit notes from Dr. Belliveau were not sufficient to establish a disability under the Plan.

## DISCUSSION

Fortier brings this suit to recover LTD benefits under her LTD policy (Count I) and waiver of premium benefits under her life insurance policy (Count II). Both counts are brought under ERISA, 29 U.S.C. § 1132. Fortier also seeks attorney's fees and costs (Count IV). The parties cross-move for judgment on the administrative record.

### I. Termination of LTD Benefits (Count I)

As Fortier states in her motion, "this case ultimately turns on whether Dr. Fortier timely appealed the September 13, 2013 termination and exhausted pre-suit remedies under ERISA." Doc. no. 35 at 9. Thus, unlike most ERISA cases, the court is not reviewing the merits of Fortier's claim that Hartford erred in terminating her benefits. Instead, the court must determine only whether Fortier exhausted her remedies prior to bringing suit.

Under ERISA, every benefit plan must, among other things, "afford reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

29 U.S.C. § 1133(2).  The Secretary of Labor has promulgated regulations for the administrative review of claims for plan benefits.  See 29 C.F.R. § 2560.503—1.  Among these is a requirement that every employee benefit plan "[p]rovide claimants at least 60 days following receipt of a notification of an adverse benefit determination within which to appeal the determination."  Id. § (h)(2)(i).  This period is extended to "at least 180 days following receipt of a notification of an adverse benefit determination" when the employee benefit plan is a "group health plan."  Id. § (h)(3)(i).[6]

The regulations further require that the communication of denial of benefits "spell out the specific reasons for an adverse determination, delineate the particular plan provisions on which the determination rests, furnish a description of any additional material necessary to perfect the claim, and provide a description of the plan's review procedures and applicable time limits."  Stephanie C. v. Blue Cross Blue Shield of Massachusetts HMO Blue, Inc., 813 F.3d 420, 425 (1st Cir. 2016) (citing 29 C.F.R. § 2560.503-1(g)(1)).  Though a beneficiary may bring suit challenging the denial of benefits under a plan

---

[6] "The term 'group health plan' means an employee welfare benefit plan providing medical care (as defined in section 213(d) of Title 26) to participants or beneficiaries directly or through insurance, reimbursement, or otherwise."  29 U.S.C. § 1167 (1).  The parties agree that the Plan is a group health plan.

subject to ERISA, see 29 U.S.C. § 1132(a), she must first exhaust her plan's administrative remedies, see Tetreault v. Reliance Standard Life Ins. Co., 769 F.3d 49, 52 (1st Cir. 2014); see also Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 610 (2013) (noting that federal courts of appeals have "uniformly required that participants exhaust internal review before bringing a claim for judicial review"). That is, a claimant must follow a plan's internal appeal process before bringing suit in order to exhaust the plan's administrative remedies. See, e.g., Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998).

Fortier contends that she exhausted her administrative remedies because she timely appealed Hartford's termination of her LTD benefits in 2013. She further argues that even if she did not submit a timely appeal, her failure to do so should be excused under the substantial compliance doctrine and the notice-prejudice rule. Defendants dispute Fortier's arguments.

A.   De Novo Versus Deferential Review

"ERISA does not establish the standard of review which courts should apply when reviewing determinations made regarding benefits claims." Rodriguez-Lopez v. Triple-S Vida, Inc., 850 F.3d 14, 20 (1st Cir. 2017). "However, the Supreme Court has held that a denial of benefits challenge 'is to be reviewed

under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Id. (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). Where the benefit plan at issue gives its administrator discretion to decide whether an employee is eligible for benefits, "the administrator's decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion." Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005).

Fortier devotes a substantial portion of her brief to arguing that the deferential standard of review should not apply to Hartford's decision to terminate her LTD benefits despite the Plan granting the administrator discretionary authority to determine eligibility for benefits. Defendants argue that the deferential standard of review should apply.

The court need not decide the appropriate standard of review because, as Fortier correctly states, the only issue presented in Count I is whether she exhausted her administrative remedies prior to bringing suit. Because that issue is the basis of Fortier's claim in Count I, "there are no factual findings or interpretations of the Plan made by the Claims Administrator to which this court should defer" and the review is de novo. Tetreault v. Reliance Standard Life Ins. Co., No.

CIV.A. 10-11420-JLT, 2011 WL 7099961, at *4 (D. Mass. Nov. 28, 2011), report and recommendation adopted, No. CIV.A. 10-11420-JLT, 2012 WL 245233 (D. Mass. Jan. 25, 2012) (applying the de novo standard of review to the issue of whether plaintiff's appeal of a plan administrator's termination decision was untimely).[7]

B.   Timeliness of Fortier's Appeal

In support of her argument that she timely filed her 2014 appeal, Fortier asserts that Hartford did not follow its own internal guidelines regarding termination of LTD benefits.  She also contends that the documents submitted with her 2012 appeal, which Hartford retained and which she asserts support her 2014 appeal, render her 2014 appeal timely.  Defendants argue that the 2014 appeal was untimely and that Fortier's theories do not excuse her failure to exhaust her administrative remedies.

1.   Hartford's failure to comply with its guidelines

Fortier contends that Hartford failed to comply with its own guidelines concerning the termination of a beneficiary's LTD claim.  She cites the "Denials and Termination" section of Hartford's LTD insurance "Product Manual."  See doc. no. 31-1.

---

[7] At oral argument, defendants suggested that the discretionary standard of review could apply to the court's review of Hartford's decision to not consider Fortier's untimely appeal.  Defendants offer no support for that assertion.

That section provides, in relevant part:

> When a policy is governed by ERISA, claimants must be
> notified of his or her appeal rights when benefits are
> wholly or partly denied (or terminated) . . . if the
> claimant submits a claim due to a physical disability
> but we approve the claim based on a Mental Illness as
> the primary cause of disability and/or after approving
> a claim where the primary basis of disability is a
> physical one we then determined that it is due to a
> Mental Illness for which a limited benefit duration
> applies, then the ERISA language should be included in
> our letter to the claimant advising him or her of
> their appeal rights for this "partial" claim denial.
> For either of these types of situations, <u>appeal
> language should again be utilized once the limited
> benefit duration has been paid and the claim
> terminated</u>.

<u>Id.</u> at 28 (emphasis added).  Fortier argues that this section

required Hartford to send her a letter after her benefits

ceased, on September 13, 2013, again advising her of her

appellate rights.  She contends that Hartford's failure to do so

renders her 2014 appeal timely.[8]

Even assuming the Product Manual is properly before the

court, Fortier's argument is without merit.[9]  First, it is

---

[8] Fortier does not contend that she suffered any prejudice
as a result of Hartford's purported failure to follow its
internal guidelines.

[9] Defendants argue that the court should not consider the
Product Manual because it is not a part of the administrative
record and was not produced in discovery in this litigation.
Defendants' contention appears to have merit.  <u>See</u> <u>Liston v.
Unum Corp. Officer Severance Plan</u>, 330 F.3d 19, 23 (1st Cir.
2003) (noting that a court's review under ERISA is generally
limited to materials in the administrative record).  Because the
Product Manual does not support Fortier's argument that her
appeal was timely, however, and because defendants addressed the

unclear whether the Product Manual applied to or was in effect when Hartford made the decision to terminate Fortier's LTD benefits. As Fortier concedes, the Product Manual is not a part of Fortier's claim file and her counsel obtained it in connection with a separate litigation in 2009. See Jacoby v. Hartford Life and Acc. Ins. Co., 254 F.R.D. 477 (S.D.N.Y. 2009). Thus, it is not clear that the requirement Fortier cites in the Product Manual applied to her claim.

More importantly, however, even if the Product Manual applies to Fortier's claim, she does not explain how Hartford's failure to follow the cited procedure renders her appeal timely. Fortier does not assert that the Product Manual was a part of the Plan and, thus, it cannot be used to override the Plan's plain language. See Karamshahi v. Ne. Utilities Serv. Co., 41 F. Supp. 2d 101, 105 (D. Mass. 1999) (holding that a plan administrator's "claims manual does not establish a legally binding requirement" and does "not have the force of law"); Wentworth v. Digital Equip. Corp., 933 F. Supp. 123, 127 (D.N.H. 1995), as amended on reconsideration (Jan. 18, 1996) (holding that a policy set forth in a company's personnel manual cannot be used to override the plain language of a benefits plan). As

---

substance of Fortier's argument in their briefing, the court assumes without deciding that it is appropriate for the court to consider the document.

the court held in its prior order, the Plan required Fortier to appeal her termination of LTD benefits within 180 days of her receipt of the July 17, 2013 letter.  See doc. no. 24 at 14-15. The fact that Hartford did not send a second letter with similar "appeal language" after it terminated Fortier's benefits, as per the guidance in the Product Manual, does not relieve Fortier of her obligations under the Plan.[10]

In short, Fortier's argument concerning the Product Manual does not support her claim that the 2014 appeal was timely.

## 2. Effect of Fortier's 2012 Appeal

Fortier notes that she timely appealed Hartford's initial termination of her LTD benefits in 2012.  She asserts that she submitted 613 pages of material in support of the 2012 appeal, and contends that these documents show that she was disabled because of a cognitive disorder due to encephalopathy, which

---

[10] In her reply, Fortier contends that an insurer must be held to statements in its internal manuals, relying on Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113 (1st Cir. 2004).  In Glista, the First Circuit considered a plan administrator's internal documents which interpreted the language of a benefit plan's preexisting conditions exclusion.  The court held the administrator's internal memoranda and training manuals represented the administrator's decision to "define terms" which helped to aid in the "interpretation of" the plan's clauses concerning whether the claimant was under a disability.  Id. at 124.  In contrast to Glista, the language in the Product Manual cited by Fortier does not bear on the interpretation of any clause relating to Fortier's disability.  As such, the Product Manual is not relevant to Fortier's claim, and the First Circuit's holding in Glista does not support her argument.

does not fall under the Mental Illness limitation. Fortier states that Hartford never reviewed the documents she submitted with the 2012 appeal and that her submission of those documents in 2012 renders her 2014 appeal timely.

Although framed differently, Fortier raised the issue of her 2012 appeal in her objection to defendants' motion to dismiss. Fortier argued then that the language in the Plan requiring a beneficiary or her representative to "appeal once" before filing an action in court is ambiguous. In rejecting that argument, the court held:

> To this end, Fortier suggests that she could reasonably be viewed as already having "appealed once," as she filed an appeal of a previous termination of her benefits in November of 2011. Such a reading is inconsistent with the language of the LTD certificate, however, which states: "<u>On any wholly or partially denied claim</u>, you or your representative must appeal once to [Hartford] for a full and fair review." Doc. no. 16-3 at 33 (emphasis added). This language, by its plain terms, requires a beneficiary or her representative to "appeal once" to Hartford on each wholly or partially denied claim.

Doc. no. 24 at 14-15. Thus, the court held that the Plan's language unambiguously required Fortier to appeal the September 2013 termination of benefits, even though she had previously appealed the September 2011 termination of benefits.

Fortier appears to argue now that because Hartford had possessed the 613 pages of documents since 2012, the court should deem her 2014 appeal to be timely. In other words, she

18

appears to contend that because she appealed the classification of her disability as subject to the "Mental Illness" limitation back in 2012, and because Hartford neither reviewed the documents she submitted nor ruled on the substantive question raised in that appeal, her 2014 appeal should be considered timely.

The court notes first that Fortier does not contend that the 2011 termination and the 2013 termination of benefits represented a single termination of benefits, and she has consistently described them in her filings as separate adverse benefit determinations. See, e.g., doc. no. 35 at 4; (noting that Fortier appealed Hartford's 2011 termination of benefits); id. at 6 (discussing "Hartford's July 17, 2013 adverse benefit determination"). As Fortier notes, she was successful in appealing from the 2011 termination of her benefits, albeit for procedural reasons unrelated to the substantive basis of her appeal. And the record shows that in terminating Fortier's benefits in 2013, Hartford considered additional medical evidence post-dating Fortier's 2012 appeal. See Admin. Rec. at 284 (discussing how Hartford considered medical records from Dr. Belliveau from May 3, 2011 to November 5, 2012, as well as Dr. Belliveau's August 6, 2012 Attending Physician Statement).

Fortier argues instead that because the basis of the 2011 termination was the same as the basis for the 2013 termination,

her appeal of the former must render her appeal of the latter timely.  She offers no support for that theory, however.  As the court previously held, the Plan required Fortier to timely appeal her September 2013 termination of benefits.  She did not do so.  The fact that documents she provided in connection with her 2012 appeal could also have supported her 2014 appeal does not render the latter appeal timely.[11]

Accordingly, Fortier's 2014 appeal of the termination of her LTD benefits was untimely.  The court therefore turns to Fortier's arguments that her untimely appeal should be excused.

C.    Equitable Considerations

Fortier argues that even if her 2014 appeal was untimely, the court should hold that she exhausted her administrative remedies because of the substantial compliance doctrine and the notice-prejudice rule.  Defendants contend that neither applies in the circumstances of this case.

---

[11] In support of her argument, Fortier cites Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund, 91 F. Supp. 2d 797 (E.D. Pa. 2000), which she contends is "remarkably parallel" to this case.  Doc. no. 35 at 17.  Foley presented a "convoluted" set of facts, in which a plan administrator sent three separate letters concerning a single denial of benefits. The court held that the last letter, which advised the plaintiff of his appeal rights and which plaintiff timely appealed, constituted a denial under the relevant plan, and thus deemed the plaintiff's appeal timely based on the date of that letter. Fortier does not explain, and the court does not see, how the holding in Foley supports her argument here.

1.   Substantial compliance doctrine

Fortier cites the "substantial compliance" doctrine, which excuses an insurer's failure to strictly comply with ERISA's notice requirements so long as "the beneficiary [was] supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." Niebauer v. Crane & Co., 783 F.3d 914, 927 (1st Cir. 2015); Terry, 145 F.3d at 35. She asserts that Hartford has availed itself of the substantial compliance doctrine in several cases, and argues that it is "unreasonable for Hartford to strictly apply deadlines against participants while excusing its own missed deadlines." Doc. no. 35 at 24.

Fortier offers no support for her theory that the substantial compliance doctrine, which applies to insurers and plan administrators, should be extended to excuse a beneficiary's failure to timely appeal an adverse benefits determination. Indeed, the only case Fortier cites that considered the issue rejected the argument that the substantial compliance doctrine should apply to claimants. See Edwards v. Briggs & Stratton Ret. Plan, 639 F.3d 355, 362 (7th Cir. 2011) ("Finally, it seems consistent neither with the policies underlying the requirement of exhaustion of administrative remedies in ERISA cases nor with judicial economy to import into

the exhaustion requirement the substantial compliance
doctrine.").  In short, the court finds unpersuasive Fortier's
substantial compliance argument.

    2.  Notice-prejudice rule

    Fortier argues that Hartford cannot demonstrate that it was
prejudiced by her late appeal and, therefore, her failure to
exhaust her administrative remedies should be excused.  In
support of this argument, Fortier relies on the notice-prejudice
rule, a doctrine recognized in some states that requires an
insurer to demonstrate prejudice before it can deny insurance
coverage solely on the basis that the insured's claim was
untimely.

    As was discussed in the court's order on defendants' motion
to dismiss, in states that recognize the notice-prejudice rule,
the rule applies to save untimely initial claims for benefits
under an ERISA plan.  See UNUM Life Ins. Co. of Am. v. Ward, 526
U.S. 358, 367-73 (1999).  New Hampshire recognizes at least a
limited form of the notice-prejudice rule, see Bianco Prof'l
Ass'n v. Home Ins. Co., 144 N.H. 288, 295 (1999), but there are
no New Hampshire cases applying the notice-prejudice rule in the
ERISA context or to group disability insurance contracts.  While
neither the First Circuit nor district courts in the circuit
have addressed the issue, the majority of courts have held that

the notice-prejudice rule does not apply to save untimely ERISA appeals.[12]  See doc. no. 24 at 16.

Fortier makes several arguments in support of the application of the notice-prejudice rule to untimely ERISA appeals in this case.  She argues: 1) unlike many other states in which courts have held that the notice-prejudice rule does not apply to ERISA appeals, New Hampshire's notice-prejudice rule is a product of common law, not a creature of statute; 2) no New Hampshire cases expressly limit the notice-prejudice rule to liability policies; and 3) to not apply the rule here would perpetuate an "artificial distinction" between the initial denial of claims and the denial of appeals.  The court addresses each argument in turn.

### a.  Common law

Fortier first argues that New Hampshire's common law notice-prejudice rule is different from the rules derived from state statutes that several courts have held do not apply to untimely ERISA appeals.  See Edwards, 639 F.3d 355 (discussing

_____

[12] As the court noted in its prior order, contrary authority could be found in an opinion out of the Eastern District of Pennsylvania, in which the court suggests in dictum that an untimely ERISA appeal would have been subject to the notice-prejudice rule, and a subsequent decision out of the Western District of Pennsylvania that parenthetically quotes that dictum.  See doc. no. 24 at 16-17 (citing cases).

notice-prejudice rule derived from Wisconsin statute);
Tetreault, 2011 WL 7099961 (same with Massachusetts statute).
To the extent Fortier asserts that New Hampshire's rule
originates from case law other than a statute, she is correct.
But she fails to explain how that distinction is material.  That
is, she does not explain why New Hampshire's common law rule
would apply to untimely ERISA appeals.  Indeed, contrary to
Fortier's position, there are several cases in various
jurisdictions which hold that a state's common-law notice-
prejudice rule does not apply to untimely ERISA appeals.  See
Chang v. Liberty Life Assur. Co. of Boston, 247 F. App'x 875,
878 (9th Cir. 2007) (noting that to extend California's common-
law "notice-prejudice rule to ERISA appeals" would be "a
significant and unprecedented extension of the rule"); Stacy v.
Appalachian Reg'l Healthcare, Inc., 259 F. Supp. 3d 644, 654
(E.D. Ky. 2017) (refusing to extend Kentucky's common-law
notice-prejudice rule to untimely ERISA appeals because such "an
application would extend the notice-prejudice rule beyond its
accepted bounds and eviscerate ERISA's exhaustion requirement
entirely"); Dietz-Clark v. HDR, Inc., No. 3:15-CV-00035 JWS,
2015 WL 6039587, at *2-3 (D. Alaska Oct. 15, 2015) (holding that
Alaska's common-law notice-prejudice rule does not apply to
ERISA appeals), aff'd, 696 F. App'x 844 (9th Cir. 2017).

Fortier's reliance upon the common-law origin of New Hampshire's notice-prejudice rule falls short of the mark.

      b.    **Limitation on notice-prejudice rule**

Fortier next argues that no New Hampshire cases expressly limit the notice-prejudice rule to liability policies. As Fortier notes, New Hampshire's notice-prejudice rule has been applied only to occurrence-based coverage in the liability insurance context. See, e.g., Sleeper Vill., LLC v. NGM Ins. Co., No. 09-cv-44-PB, 2010 WL 3860373, at *3 (D.N.H. Oct. 1, 2010) (describing New Hampshire's notice-prejudice rule as providing "that a claim for coverage under an occurrence-based liability insurance policy will not be defeated by late notice of a claim unless the insured can establish that it was prejudiced by the late notice"). The rationale for applying the notice-prejudice rule in the context of occurrence-based coverage is clear: the insurer contracts to pay for all occurrences within a certain time-period. If the insured makes a late claim on such an occurrence, it makes sense to impose a requirement on the insurer to show prejudice before denying such a claim—where the parties contracted for coverage on just such a claim. These considerations do not exist for claims-based policies, where the insured contracts for claims brought within a certain time-period.

Fortier asserts nevertheless that New Hampshire's notice-prejudice rule is not limited to the occurrence-based, liability insurance context and can be extended to ERISA exhaustion.  She argues that although New Hampshire's notice-prejudice rule has been applied only in the occurrence-based, liability insurance context, no New Hampshire case has expressly limited its application to that context.  That argument, by itself, is not persuasive.

Fortier also attempts to analogize ERISA appeals to uninsured motorist coverage, an area where New Hampshire courts have applied the notice-prejudice rule.  Other than stating that both involve the evaluation of medical records, however, Fortier offers no argument in favor of her uninsured motorist coverage analogy.  Without more, the court does not see how the application of the notice-prejudice rule to uninsured motorist coverage supports extending the rule to untimely ERISA appeals.  See, e.g., Knight v. Provident Life & Acc. Ins. Co., No. 3:12-CV-01226, 2014 WL 460018, at *2 (M.D. Tenn. Feb. 5, 2014) (suggesting that the Tennessee notice-prejudice rule, which applies to uninsured motorist policies, should not be extended to apply to untimely ERISA appeals).  The court therefore finds Fortier's second argument unpersuasive.

c.  Initial claims versus appeals

Fortier's final argument is that the rationale behind the notice-prejudice rule supports applying it to untimely ERISA appeals, and that not applying it here would perpetuate an "artificial distinction" between the initial denial of claims and the denial of appeals.  Doc. no. 37 at 2.

The difference between initial claims and appeals is more than a mere arbitrary designation.  ERISA mandates claims procedures and processes to effectuate certain policies:

> Congress' apparent intent in mandating these internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement.  It would be anomalous if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized.

Terry, 145 F.3d at 40 (internal citation omitted).  In other words, ERISA's exhaustion requirement serves different purposes than the denial of claims process.  See Edwards, 639 F.3d at 360-61 (noting how ERISA's exhaustion requirements "encourages informal, non-judicial resolution of disputes about employee benefits" and "helps to prepare the ground for litigation in case administrative dispute resolution proves unavailing"); Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993) (same); see also Schorsch v. Reliance Standard

Life Ins. Co., 693 F.3d 734, 739 (7th Cir. 2012) (discussing how ERISA's exhaustion requirement works "to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned" (internal quotation marks and citation omitted)).

Every court that has substantively addressed the issue has held that the notice-prejudice rule does not apply to the denial of an untimely ERISA appeal. Fortier has not shown that New Hampshire law supports a different result. In light of the justifications for ERISA's administrative exhaustion requirement, the court sees no basis on which to extend the notice-prejudice rule beyond its current limits in the ERISA context.

### 3. Futility

In her reply, Fortier raises for the first time the argument that the court should excuse her failure to timely appeal in 2014 because her appeal would have been futile. Although a party generally cannot raise or develop arguments for the first time in a reply, Andersen v. Dartmouth Hitchcock Med. Ctr., No. 13-cv-477-JD, 2015 WL 847447, at *5 (D.N.H. Feb. 26, 2015), the court briefly addresses Fortier's argument.

Futility is an exception to ERISA's exhaustion requirement. An employee is not required to exhaust her administrative remedies in those instances where it would be futile for her to do so. Madera v. Marsh USA, Inc., 426 F.3d 56, 62 (1st Cir. 2005) (internal citation omitted). A claimant "bears a heavy burden of establishing futility" and must make "a clear and positive showing of virtual certainty that resort to administrative remedies would result in denial of the claim." Corsini v. United Healthcare Corp., 965 F. Supp. 265, 269 (D.R.I. 1997) (internal quotation marks and citation omitted).

Fortier's argument appears to be that her appeal would have been futile because Hartford did not look at the medical documents she submitted in connection with her 2012 appeal. But, in response to the 2012 appeal, Hartford reinstated Fortier's benefits based on its review of her record and its own determination that it had not properly calculated the beginning point for the benefits period. Fortier's attempt to draw a negative inference from her successful 2012 appeal is misplaced. The record does not show that Hartford would have denied a timely appeal in 2014.

As a result, Fortier has not met her burden of showing the doctrine of futility applies to excuse her from exhausting her administrative remedies.

D.   <u>Summary</u>

The court is not unsympathetic to Fortier's situation.  The administrative record, however, shows that she did not timely appeal Hartford's decision to terminate her LTD benefits and thus failed to exhaust her administrative remedies.  Neither the substantial compliance doctrine nor the notice-prejudice rule operates to excuse that failure.  For these reasons, defendants are entitled to judgment on Count I.

II. <u>Termination of Waiver of Premium Benefits (Count II)</u>

In her amended complaint, Fortier alleges in support of Count II that Hartford's "decision to terminate life insurance coverage was not supported by substantial evidence [and] was wrongful and not in compliance with applicable laws."  Doc. no. 13 at ¶ 13.  Other than one stray sentence in her motion for judgment on the administrative record, however, Fortier makes no mention of her claim for waiver of premium benefits.  She also does not respond in her reply to Hartford's assertion that she appears to have abandoned her claim in Count II.  At oral argument, Fortier asserted that she was not abandoning her claim in Count II, though she could not articulate an argument in support of that claim.

The facts underlying Hartford's decision to terminate Fortier's waiver of premium benefits under the life insurance

policy are not in dispute.  Despite Hartford's several requests, Fortier failed to provide information from her doctors to allow Hartford to evaluate her disability.  Although Fortier timely appealed the termination of her waiver of premium benefits, she provided minimal medical records, and did not provide any additional information, despite stating that she would do so. Fortier does not explain how these facts could give rise to an ERISA claim.[13]

Accordingly, defendants are entitled to judgment on Count II.

## III. <u>Attorney's Fees and Costs (Count IV)</u>

In Count IV, Fortier seeks attorney's fees and costs under 29 U.S.C. § 1132(g).  That statute provides: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  Because defendants are entitled to judgment on both of Fortier's ERISA claims, Fortier is not entitled to fees and costs.

---

[13] Because Fortier makes no argument as to Count II, the court need not decide whether deferential or de novo review would be appropriate to evaluate Hartford's decision to terminate her waiver of premium benefits in Count II.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the administrative record (doc. no. 34) is denied. Defendants' motion for judgment on the administrative record (doc. no. 36) is granted.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

July 23, 2018

cc:   Counsel of Record